MOUNT ET AL., APPELLEES, *v.* DIRCKSEN ET AL., APPELLANTS.

(No. 627—Decided April 10, 1963.)

*Messrs. Miller, Finney & Clark*, for appellees.
*Messrs. Peterson, Neatherson & Peterson*, for appellants.

CRAWFORD, J. Plaintiffs, appellees herein, seek judgment upon a promissory note for the balance of the purchase price of real estate, and foreclosure of a mortgage securing the note. Defendants, appellants herein, answered, denying their indebtedness and claiming damages in an amount equal to the balance on the note, such damages allegedly arising from false representations. Plaintiffs replied, denying fraud and alleging the running of the four-year statute of limitations on a cause of action for fraud. Section 2305.09 (C), Revised Code.

At the outset of the trial, plaintiffs called the two defendants for cross-examination and immediately upon the conclusion of their testimony moved for judgment upon the basis of certain admissions made by them. The motion was sustained and judgment entered for the plaintiffs.

This action of the court is assigned as error, defendants contending that they were denied their day in court, that the alleged fraud was not discovered until less than four years before the filing of their answer, and that the statute of limitations does not apply where fraud is set up as a defense.

On September 8, 1954, the parties entered into an agreement that defendants would purchase plaintiffs' dairy farm for the sum of $46,000, of which $31,000 was to be paid in cash. Ten days later, on September 18, 1954, defendants executed a note and mortgage for the balance of $15,000, of which $4,000 was to be paid in four annual installments of $1,000 each and the remaining $11,000 was to be paid at the end of five years.

Defendants entered into possession, made the four $1,000 annual payments, but paid neither principal nor interest after the fourth annual installment was paid on October 9, 1958.

Defendants claim that, prior to the signing of the land sale agreement, they were assured by plaintiffs that there was plenty of water on the farm and were thereby induced to sign the agreement; and that plaintiffs' representations regarding the water were untrue, although plaintiffs were fully informed as to the facts. Defendants' counsel say that, although defendants had difficulty in obtaining sufficient water, which aroused their suspicions, they had no actual knowledge of the real condition and of the falsity of plaintiffs' representations until September 8, 1956, when there was drilled for defendants a test well to a depth of 71 feet, which proved to be dry. It is pointed

out that the defendants' answer was filed on May 13, 1960, within four years after the drilling of this test well.

In their cross-examination, the defendants were not asked and did not testify about the drilling of the test well. They did testify as to the representations made to them. And they admitted experiencing a shortage of water soon after they took possession, before the end of 1954, with which shortage they struggled continually thereafter. It was largely upon the basis of these admissions that plaintiffs asserted a right to judgment, claiming that these admissions proved that the facts upon which the alleged fraud was based were known to defendants more than four years before the filing of defendants' answer.

Plaintiffs' counsel also stress the fact that, despite their early discovery of the claimed water shortage, defendants nevertheless proceeded to make the four annual installment payments on the note and suffered in silence, making no complaint to the plaintiffs until they filed their answer in the foreclosure suit.

Defendants' counsel, availing themselves of the last paragraph of Section 2305.09, Revised Code, insist that defendants' suspicion of the falsity of plaintiffs' representations did not ripen into actual knowledge until September 8, 1956; and that, therefore, the four-year statute did not begin to run until the fraud was discovered on that date.

Defendants' counsel argue further that the defense of fraud is still available even after the statute of limitations has run upon a cause of action in fraud. In support they cite the case of *Nasby Building Co.* v. *Walbridge Building Co.,* 6 Ohio App.; 104, wherein the court said that "manifestly the purpose of the statute of limitations is, as has been well said, to bar actions and not to suppress or deny matters of defense whether equitable or legal."

The facts there were not unlike those in the present case. That case has been consistently followed by other Ohio courts. In 1953, the Supreme Court said: "That decision of a Circuit Court of Ohio rendered some 65 years ago [*Harrod* v. *Carder's Admr.,* 3 C. C., 479] has never been overruled or modified by any decision of this court. On the other hand, it has been considered as stating the law of Ohio on the subject, and many other decisions of the Circuit Courts and Courts of Appeals of

this state have recognized that decision as the law of Ohio." *Summers* v. *Connolly, Admr.*, 159 Ohio St., 396, 413.

At this point we cannot evaluate defendants' claim of delayed discovery of the alleged fraud because they have not yet had an opportunity to present their evidence in support of that contention.

An argument of the defendants which especially concerns us is that they have been denied their day in court. Neither the briefs nor our research has revealed any case where a motion for directed verdict or for judgment has ever been sustained against a party who has not yet had an opportunity to present his own case. Sometimes such a motion is sustained upon counsel's opening statement, but that involves a failure in an important phase of the presentation of that party's case against whom the motion is directed. The present motion is not directed to the opening statement. In this instance the plaintiffs seek judgment on the basis of what has occurred in the beginning of their own case, not upon what the defendants have done or failed to do in the presentation of theirs. The case of the defendants has not yet been reached and they have had no opportunity either to present evidence or to explain, if they can, what they have said on cross-examination.

Even the summary judgment act does not furnish authority for this shortcut. While the game is in progress the base ball team cannot be counted out before it comes to bat.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.